**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 DEC 14  PM 4: 01

MARGARET BOTKINS. CLERK
CASPER

UNITED STATES OF AMERICA,

    Plaintiff,

v.

VINCENT ANDREW BAXTER,

    Defendant.

Case No. 20-CR-149-SWS

---

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

---

This matter comes before the Court on Defendant Vincent Baxter's Motion to Suppress (Doc. 29) and the Government's opposition (Doc. 32). The Court held an evidentiary hearing on the matter on December 8, 2020. (Doc. 34.) Having considered the evidence, testimony, and the parties' arguments, the Court finds suppression is not warranted.

### INTRODUCTION

Mr. Baxter was indicted on one count of being a felon in possession of firearms and ammunition. (Doc. 13.) The firearms and ammunition were found at Mr. Baxter's residence during the execution of a state court search warrant, which authorized law enforcement to search for "[p]arts from a 1993 Jeep Wrangler to include a rear axle and carburetor." (Doc. 29-1 p. 1; *see* Doc. 29-2 p. 2.) The search warrant and the affidavit of Detective Casey Patterson submitted in support of the application for the warrant contain several clerical and typographical errors. Partially due to these errors, Mr. Baxter seeks to suppress the fruits of the search along with "any statements allegedly made by Mr. Baxter during the execution of

the search warrant, during his arrest and subsequent to his arrest" (Doc. 29 p. 1), though his motion does not identify any such statements.

## **BACKGROUND**

In mid-March 2020, Mr. Baxter purchased a 1991 Jeep Wrangler from Good Guys Auto Sales, a company in Cheyenne, Wyoming, owned by Robert Hinton. (Doc. 29-1 p. 2.) Over the next several weeks, Mr. Baxter repeatedly returned to the company or directly contacted Hinton about obtaining additional parts for his 1991 Jeep to be taken from a 1993 Jeep Wrangler that Good Guys had for sale on its lot. (*Id.*) Good Guys did not provide the parts Mr. Baxter asked for, which included rear and front axles. (*Id.*) Eventually, Hinton told Mr. Baxter he did not have any parts for him and instructed him to stop contacting the company. (*Id.*)

On May 18, 2020, the 1993 Jeep was stolen from Good Guys Auto Sales' lot. (*Id.*) The company's video surveillance showed a Chevrolet Silverado pickup truck with a trailer being driven in the area of the car lot at around 1:50 a.m. that morning. (*Id.*) The same truck and trailer were observed again on surveillance at around 3:15 a.m. that morning. (*Id.*) The surveillance video "freezes and jumps about 8 minutes," but then shows the 1993 Jeep being driven off the auto lot. (*Id.*)

Hinton drove past Mr. Baxter's residence and observed a Chevrolet Silverado and trailer that appeared to match that seen on the surveillance video. (Doc. 29-1 p. 3.) It does not appear Hinton reported the vehicle theft to law enforcement at that time.

The next important event occurred on July 26, 2020, but it concerns one of the errors in Detective Patterson's affidavit:

On July 26, 2020, Officer Brown took a report from Baxter who learned his
1993 Jeep was found on property in Weld County, Colorado near Herford.
Baxter notified Weld County Deputies, who responded. Weld County Deputies
responded and recovered three stolen vehicles; Baxter's 1993 Jeep, and two
trailers from unrelated cases. Baxter's Jeep had been partially stripped and was
missing axles, seats and other components.

(Doc. 29-1 p. 3.) Detective Patterson attempted to correct this misstatement at the December

8, 2020 evidentiary hearing by clarifying that it was the 1993 Jeep stolen from Good Guys

Auto Shop that had been recovered in Colorado, not any of Mr. Baxter's vehicles.

In early August 2020, Detective Patterson called Mr. Baxter to discuss the matter. Mr.

Baxter said he had obtained several Jeep parts from Aaron Briggs in mid-May 2020, and he

had installed some of those parts onto the 1991 Jeep Wrangler. (Doc. 29-1 p. 3.) Mr. Baxter

said the parts he bought from Briggs included axles, suspension components, and a speaker

box, among others. (Id.) Mr. Baxter told Detective Patterson he was willing to return the

parts if it turned out they were stolen. (Id.) Briggs was shot and killed on May 22, 2020, and

thus could not be questioned. (Id.)

On August 12, 2020, with the agreement of Mr. Baxter and with detectives standing

by, Hinton went to Mr. Baxter's house and loaded several vehicle parts onto a trailer. (Id.)

Those parts included a rear axle with brake drums, a front four-wheel-drive axle, and a speaker

box, among others. (Id.) While there, Hinton told the detectives these parts were from the

stolen 1993 Jeep. (Id.) Hinton also said the carburetor from the 1993 Jeep was not recovered

and he suspected Mr. Baxter still had it. (Id.) During this retrieval, Detective Patterson asked

Mr. Baxter if he had made any changes to his 1991 Jeep, and Mr. Baxter said he painted it tan

and installed the rear axle on it that he had obtained from Briggs. (Id.)

Next comes the most serious error in Detective Patterson's probable cause affidavit,

where he wrote,

> Hinton later stated the parts he recovered from Baxter's back yard were parts from the 1991 Jeep, not the 1993 Jeep that was stolen, stripped and recovered.

(*Id.*)  Much attention was given this paragraph at the December 8, 2020 hearing, where Detective Patterson testified he accidentally wrote the sentence backwards.  Thus, Detective Patterson testified that after the parts retrieval on August 12th, Hinton told Detective Patterson the parts he recovered were indeed from the stolen 1993 Jeep.  At a minimum, this very serious error conveyed inaccurate information to the reviewing judicial officer.

In early September 2020, Detective Patterson penned an affidavit requesting a search warrant for Mr. Baxter's residence for parts from the 1993 Jeep, including any that had been installed onto the 1991 Jeep.  (Doc. 29-1 pp. 2-5.)  A state circuit court judge in Cheyenne issued a search warrant for Mr. Baxter's residence.  (Doc. 29-1 p. 1.)  The search warrant states it is based on the affidavit submitted by "Detective Morgan," though the only affidavit is by Detective Patterson.  (*Id.*)  Additionally, the search warrant includes a space for the judge to hand write when the search warrant is to be executed, but it was not filled in.  (*Id.*)  The search warrant was dated September 8, 2020 (*id.*), and it was executed two days later (Doc. 29-2 p. 2).

## DISCUSSION

Mr. Baxter contends the search warrant was invalid on its face, Detective Patterson's affidavit did not provide the probable cause necessary to support the search warrant, Detective Patterson's affidavit included false information and omitted material information, and the Return of Inventory and Receipt is invalid.  (Doc. 29.)  "The ordinary remedy for a search conducted or items seized in violation of the Fourth Amendment's warrant requirements is suppression."  *United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006).

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. Probable cause demands the judicial officer issuing a search warrant to

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for … conclud[ing]" that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "[C]ourts should interpret warrants in a 'commonsense and realistic fashion,' rather than a 'hypertechnical' manner." *Sells*, 463 F.3d at 1156 (quoting *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965)). "A district court reviewing the probable cause for a warrant puts itself in the shoes of the warrant's issuing jurist and gives substantial deference to the prior decision." *United States v. Moses*, 965 F.3d 1106, 1112 (10th Cir. 2020) (citing *Gates*, 432 U.S. at 236).

**1.     The typographical and clerical errors on the search warrant do not invalidate it.**

As noted above, the search warrant included two manifest errors. The first said it was based on an "[a]ffidavit having been made … by Detective Morgan" (Doc. 29-1 p. 1), whereas the only supporting affidavit was presented by Detective Patterson (Doc. 29-1 pp. 2-5). The second error is the issuing judge's failure to write in the blank date on the line that said the search warrant was to be executed "on the ___ day of _____, 20___, or within ten days thereafter …." (Doc. 29-1 p. 1.)

These errors reflect a lack of attention to detail, but invalidating the warrant based

thereon would require the Court to interpret the warrant in a hyper-technical manner, which it does not do when reviewing a search warrant. Rather, the practical, common-sense, realistic interpretation of the warrant shows the reference to "Detective Morgan" was merely a typographical error that did not mislead the state court judge. Instead, it was clear to the issuing judge that the application was presented by Detective Patterson. (Doc. 29-1 pp. 2-5.) It is also clear that the issuing judge relied on Detective Patterson's affidavit, not any affidavit from "Detective Morgan." Mr. Baxter has not identified any prejudice caused by the incorrect reference to "Detective Morgan," and the error does not render the search warrant unconstitutional. *See United States v. McCoy*, 478 F.2d 176, 179-80 (10th Cir. 1973) (search warrant that identified the wrong affiant was not invalid as there was no resulting prejudice to the defendant).

Additionally, the state court judge's failure to set forth a date for execution of the search warrant was immaterial. The judge signed and issued the warrant on September 8, 2020, and it was executed two days later. (Doc. 29-1 p. 1; Doc. 29-2 p. 2.) Wyoming Rule of Criminal Procedure 41 requires search warrants to be executed within ten days of their issuance. Wyo. R. Crim. P. 41(e)(1)(A) ("The warrant must command the peace officer to initiate the execution of the warrant within a specified time not to exceed 10 days."). The search warrant here instructed law enforcement to search on the undesignated date, "or within ten days thereafter." As the search occurred within ten days of the issuance of the warrant, it necessarily came within ten days of any date the issuing judge could have written in.[1] The omission on

---

[1] Indeed, an argument could be made that writing in a date other than the date the search warrant was issued in this case would have violated Wyo. R. Crim. P. 41(e)(1)(A) because it would have exceeded the Rule's 10-day limitation.

the face of the search warrant does not render it unconstitutional. *See United States v. Nelson*, No. 07-CR-0045-CVE, 2008 WL 3896123, at *2 (N.D. Okla. Aug. 19, 2008) (unpublished) (affirming validity of search warrant that included an erroneous issuance date, but which was executed within ten days of its issuance as required by state law).

2.     **The state court judge had a substantial basis for concluding that Detective Patterson's supporting affidavit, in its original form, set forth sufficient probable cause for a search warrant.**

When reviewing the existence of probable cause, this Court "puts itself in the shoes of the warrant's issuing jurist" and examines the information as it was presented to the issuing judge. *Moses*, 965 F.3d at 1112. Thus, the Court will start by addressing the two substantive errors in Detective Patterson's affidavit that he sought to correct with his testimony at the December 8, 2020 hearing. Detective Patterson's first substantive error said,

> On July 26, 2020, Officer Brown took a report from Baxter who learned his 1993 Jeep was found on property in Weld County, Colorado near Herford. Baxter notified Weld County Deputies, who responded. Weld County Deputies responded and recovered three stolen vehicles; Baxter's 1993 Jeep, and two trailers from unrelated cases. Baxter's Jeep had been partially stripped and was missing axles, seats and other components.

(Doc. 29-1 p. 3.) In reading the affidavit as a whole, though, the Court does not find any serious threat that the state court judge was materially misled by this paragraph. It simply named "Baxter" where it should have said "Hinton." The remainder of the affidavit sets forth that Hinton had a 1993 Jeep stolen from his auto lot while Mr. Baxter had previously purchased a 1991 Jeep. Considering the affidavit in a practical, common-sense way leads the Court to conclude this misstatement could be read correctly by the state court judge through reasonable inferences and does not vitiate probable cause.

Next, the Court considers the more serious misstatement:

Hinton later stated the parts he recovered from Baxter's back yard were parts from the 1991 Jeep, not the 1993 Jeep that was stolen, stripped and recovered.

(*Id.*) Detective Patterson testified at the hearing that Hinton actually told him the opposite: that the parts recovered were indeed from the stolen 1993 Jeep. However, the state court judge did not have this version of events to consider, and this Court considers the probable-cause question using the same information available to the warrant-issuing judicial officer. Therefore, the Court must examine the question of probable cause with the understanding that Hinton said the parts he took from Mr. Baxter's property were not in fact connected to the stolen 1993 Jeep.

Detective Patterson's affidavit established a reasonable basis to believe the following material information:

- Mr. Baxter had repeatedly expressed interest in obtaining parts from the 1993 Jeep Wrangler owned by Good Guys Auto Sales so that he could install them on the 1991 Jeep Wrangler he had recently purchased.

- In mid-May 2020, the 1993 Jeep Wrangler was stolen in the middle of the night, and surveillance video from that night showed a Chevrolet Silverado with a trailer driving around the car lot area twice shortly before the 1993 Jeep was taken.

- Good Guys Auto Sales' owner, Robert Hinton, then observed a Chevrolet Silverado and trailer on Mr. Baxter's property matching those seen in the surveillance video.

- The 1993 Jeep was later found in Colorado after having been stripped of several parts, including some parts (e.g., a rear axle) that Mr. Baxter had asked Hinton for.

- When asked about the matter, Mr. Baxter informed police he had obtained several Jeep parts, including some (e.g., an axle) he had been asking Hinton about obtaining from the 1993 Jeep, from Aaron Briggs in mid-May 2020, which was about the time the 1993 Jeep had been stolen from the car lot.

- Mr. Baxter cooperated and said he would be willing to return the parts if they had been stolen. On August 12, 2020, Hinton collected some parts from Mr. Baxter's property with Mr. Baxter's permission, including a rear axle, but those parts turned out to be

from the 1991 Jeep, not the stolen 1993 Jeep.

- At that time, Mr. Baxter told Detective Patterson he had installed the rear axle obtained from Aaron Briggs onto his 1991 Jeep.

- Hinton later told police the carburetor from the stolen 1993 Jeep was not among the items recovered and he suspected Mr. Baxter had it.

- "According to several online sources, to include Quadratec and West Coast Differentials, the factory axle for a 1993 Jeep Wrangler is a DANA 35. This axle is manufactured with multiple numbers stamped which includes the manufacturing date. The manufacturing date includes the month, day, year, build line, and build shift for that specific axle."

(Doc. 29-1 pp. 2-4.)

This information along with reasonable inferences suggests Detective Patterson learned a rear axle and carburetor from the stolen 1993 Jeep were still missing after the August 12th consensual parts recovery. This in turn led to a fair probability that the rear axle recently installed on Mr. Baxter's 1991 Jeep came from the stolen 1993 Jeep and the missing carburetor (more on that below), which is a fairly compact item, could be found inside one of the buildings on Mr. Baxter's property. *See Moses*, 965 F.3d at 1112 ("a judge is free to draw, 'or refuse to draw,' any 'reasonable inferences as he will from the material supplied to him'") (quoting *Gates*, 462 U.S. at 240).

Mr. Baxter asserts that when Hinton collected the parts from his property, while the detectives served as civil stand-by, "there was full access granted to Mr. Baxter's 1991 Jeep Wrangler that he told the Affiant was fitted with a new axle obtained through Mr. Biggs [sic]; however, the affiant did not deem it necessary to verify whether that axle was stamped with 'DANA 35' even when having complete access to the vehicle with Mr. Baxter's permission." (Doc. 29 p. 8.) There is nothing to suggest, though, that Detective Patterson knew about the

"DANA 35" information during the August 12th parts recovery. (*See* Doc. 29-1.) Moreover, there was no logical reason for Detective Patterson to investigate the rear axle on the 1991 Jeep at that time because Hinton recovered "a rear axle" and had loaded it onto his trailer. (Doc. 29-1 p. 3.) Thus, as far as Detective Patterson knew at the time, Hinton had collected the appropriate rear axle from Mr. Baxter's property, which would leave Detective Patterson no reason to investigate the rear axle installed on the 1991 Jeep. Detective Patterson's decision (if it can be called that) on August 12th to not investigate the manufacturing information on the rear axle installed on the 1991 Jeep while Hinton collected a rear axle from the property does nothing to undercut the state court judge's probable cause finding.

Considering the totality of the circumstances, a substantial basis existed for the issuing judge to conclude Detective Patterson's supporting affidavit set forth a fair probability that evidence of a particular crime, motor vehicle theft, would be found at Mr. Baxter's residence. Thus, probable cause existed to support the search warrant issuing.

### 3. Detective Patterson's supporting affidavit did not contain materially false information or omit relevant information.

Mr. Baxter next contends Detective Patterson's affidavit contains materially false information and omits certain exculpatory information. He argues that if the false information is excised and the omitted information is included, the affidavit would fail to set forth sufficient probable cause for a search warrant. (Doc. 29 pp. 8-11.)

> A search warrant must be voided and the fruits of the search suppressed where a court (1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) concludes, after excising such false statements and considering such material omissions, that the corrected affidavit does not support a finding of probable cause.

*United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). "If a defendant makes a 'substantial preliminary showing' that both of these elements exist, he is entitled to an evidentiary hearing to prove a *Franks* violation." *Moses*, 965 F.3d at 1110 (citing *Franks*, 438 U.S. at 155).

> Mr. Baxter says Detective Patterson omitted the fact that
>
> the 1993 Jeep was fuel injected and therefore there would not have been a carburetor to search for in or around Mr. Baxter's home. This is clearly shown in the interview during the execution of the search warrant wherein law enforcement states at 23 minutes and 13 seconds the only thing they got for a vehicle was an "air cleaner" (which was in the garage and not part of the search warrant) and "that vehicle was fuel injected so there would not be a carburetor."

(Doc. 29 p. 10.) The Government provided a brief excerpt of the audio-recorded interview on a compact disc, which was admitted as Exhibit 1 at the December 8, 2020 hearing. The Court has listened to the audio clip of the interview conducted on September 10, 2020, and finds it does not prove what Mr. Baxter alleges. Instead, Mr. Baxter told Detective Patterson that the vehicle was fuel injected in the following exchange:

> Baxter: Did you get any stolen parts that you need out of there?
> Patterson: We got -- the air cleaner.
> Baxter: Okay.
> Patterson: And we didn't find the carburetor, so --
> Baxter: Yeah. [Inaudible] carburetor.
> Patterson: Was that vehicle fuel injected?
> Baxter: It was. Yeah.
> Patterson: So there wouldn't be a carburetor.
> Baxter: Probably not. Hey dad [apparently starting a different conversation].

(Court staff's unofficial transcription of audio clip from Exhibit 1.) Detective Patterson asked whether the vehicle was fuel injected; he did not state such. And Hinton, who owns an auto sales company, had previously "stated the carburetor from his 1993 Jeep was not recovered [during the August 12th recovery from Mr. Baxter's property] and suspected Baxter still had

it." (Doc. 29-1 p. 3.) Thus, this exchange does not suggest Detective Patterson knew at the time he applied for the search warrant that there was not a carburetor missing.[2]

At the December 8, 2020 hearing, Mr. Baxter also testified that during the August 12th parts recovery by Hinton, Mr. Baxter told Detective Patterson the 1991 was fuel injected, thus apparently suggesting there was no reason for Mr. Baxter to have or need a carburetor. In contrast, at the December 8, 2020 hearing, Detective Patterson testified that he learned the 1991 Jeep was fuel injected only at the interview with Mr. Baxter during the execution of the search warrant; he did not know it before. The Court resolves this conflicting testimony by referring back to the audio recording of the interview (Exhibit 1 of the hearing). Detective Patterson's question of "Was that vehicle fuel injected?" supports his testimony that he did not know the "vehicle" (presumably, the 1991 Jeep) was fuel injected before then. The Court finds Detective Patterson's testimony on this subject credible. Therefore, he did not err by asserting in his probable cause affidavit, in conformity with what he had learned from Hinton, that a carburetor from the stolen 1993 Jeep remained missing.

While it appears the statements about a stolen or missing carburetor have turned out to be technically false, the Court finds Detective Patterson did not knowingly or recklessly include those false statements in his affidavit. He had little reason to question the accuracy of what Hinton had told him on the subject. Statements about a carburetor missing from the stolen 1993 Jeep need not be excised from the affidavit.

---

[2]  The Government believes Detective Patterson was asking Mr. Baxter about the carburetor versus fuel injection on Mr. Baxter's 1991 Jeep, not the stolen 1993 Jeep. (Doc. 32 pp. 11-12.) Either way, though, this interview occurred after the search warrant was issued and therefore would not have given Detective Patterson any reason to question the veracity of his carburetor-related statements at the time he submitted his affidavit to the state court judge.

Mr. Baxter also asserts, "The Affiant intentionally omitted the fact that the Defendant's neighbors were hounding local law enforcement, FBI and ATF from May 20, 2020 on to harass Mr. Baxter. (6/29/2020 Report of Investigation prepared by Kyle LaTulippe noting entries of May 20, 2020, June 3, 2020, and June 29, 2020[.])" (Doc. 29 p. 10.) He continues:

> The Affiant fails to explain that the neighbors were "engaged in a civil suit against Mr. Baxter's fence" (see FBI report of Jennifer McGrath date of entry 6/8/2020) but uses the description of the fence as asserted by those neighbors [in the supporting affidavit]. The Affiant fails to indicated [sic] that in contact with the neighbors 2 days after the [1993] Jeep is stolen that the "six cameras installed" on the neighbor's captured no criminal activity on the night relied upon in the probable cause affidavit. The Affiant fails to inform the Court that on August 5, 2020 ATF Agent Kyle LaTulippe, without any probable cause basis, conducts a surveillance of the Defendant's home which produces no criminal activity. (8/5/2020 Report of Investigation prepared by Kyle LaTulippe noting that one person was observed entering the residence of Mr. Baxter and no criminal activity observed.)

(Doc. 29 p. 10.)

That Mr. Baxter was engaged in a dispute with his neighbors over a fence is immaterial to whether probable cause existed to support the search warrant for parts from the stolen 1993 Jeep. Likewise, from where Detective Patterson obtained the description of the fence is also immaterial because it has nothing to do with the issuing judge's probable cause determination; it was merely included to accurately identify the property to be searched. (*See* Doc. 29-1 p. 1.) And finally, the fact that neither the neighbors' cameras nor ATF Agent LaTullipe observed criminal activity by Mr. Baxter or at Mr. Baxter's residence is not relevant to the question of probable cause to support the search warrant. Indeed, the affidavit does not allege Mr. Baxter stole the 1993 Jeep or its parts; instead, it notes Mr. Baxter said he had obtained some Jeep parts from Aaron Briggs around the time the 1993 Jeep was stolen and several of the same parts had been stripped from the stolen 1993 Jeep. Thus, while probable

cause existed to believe some of the stolen parts could still be found at Mr. Baxter's residence, it was also plausible that Mr. Baxter obtained those parts from Briggs while not knowing they were stolen. The fact that Mr. Baxter was not observed breaking the law would not discount the fair probability that some of the parts stripped from the stolen 1993 Jeep could be found on his property. Detective Patterson's failure to include this irrelevant information was not erroneous. *See Moses*, 965 F.3d at 1114 ("We simply are not persuaded that the lack of suspicious activity on video undermines that probable cause—let alone fatally.... We therefore conclude that the pole camera footage—and the fact that it did not show any criminal activity—would not have negated probable cause if it were included in the search warrant affidavit.").

Mr. Baxter has not made a "substantial preliminary showing" that both falsity and materiality exist such that he is entitled to an evidentiary hearing under *Franks v. Delaware*. *See Moses*, 965 F.3d at 1110. To expedite the matter, the Court permitted the parties to present testimony and evidence on the issue at the December 8, 2020 hearing. The testimony and evidence presented at the hearing does not alter the Court's conclusion that Detective Patterson's affidavit in support of search warrant application did not knowingly or recklessly contain falsities or omit material information. There was no *Franks*-related violation of Mr. Baxter's Fourth Amendment rights here.

## 4.   The Return of Inventory and Receipt is not invalidated by its incorrect date.

The Return of Inventory and Receipt following execution of the search warrant at Mr. Baxter's residence says the return was made "pursuant to Warrant for Search and Seizure issued on the 27th day of August, 2019." (Doc. 29-2.) Mr. Baxter asserts this incorrect

reference to the true date of the search warrant renders the return invalid. (Doc. 29 p. 11.) Again, this error is less than impressive, but it does not render anything invalid. Mr. Baxter has not suggested how this incorrect date might have caused him any prejudice. Further, the Return of Inventory and Receipt is dated by Detective Patterson as September 10, 2020 (Doc. 29-2 p. 1), which is the date the search warrant was actually executed (Doc. 29-2 p. 2). Finally, even were the Court to find the Return of Inventory and Receipt invalid, it would not render the search warrant invalid because the return and receipt played no part in the issuing judge's probable-cause determination. Even were Mr. Baxter to prevail on this issue, it would not provide him any relief.

5.     **Even if the search warrant was not supported by sufficient probable cause, suppression is not warranted in this case under *Leon's* good-faith exception.**

The Supreme Court explained in *United States v. Leon*, 468 U.S. 897 (1984), "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 919. *Leon* modified the exclusionary rule "so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Id.* at 900. "Leon's good faith exception applies only narrowly, and ordinarily only when an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer." *United States v. Loera*, 923 F.3d 907, 925 (10th Cir. 2019) (quoting *Unites States v. Cos*, 498 F.3d 1238, 1251 (10th Cir. 2006)).

The Court finds there is no evidence here of deliberate, reckless, or grossly negligent conduct by Detective Patterson when applying for the search warrant. *See Herring v. United States*, 555 U.S. 135, 145 (2009) ("the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct").   Mr. Baxter's claim that Detective Patterson knowingly or recklessly included false information and omitted material exculpatory information in the supporting affidavit is not borne out by the evidence. And it was Hinton's report of the stolen 1993 Jeep combined with Mr. Baxter's repeated interest in obtaining parts from the 1993 Jeep that set this investigation into motion, not any inappropriate or unwarranted law enforcement focus on Mr. Baxter.   Finally, the evidence does not suggest the state court judge acted as anything but a detached and neutral magistrate when issuing the search warrant.

Even if the state court judge erred in finding probable cause supporting the issuance of the search warrant in this case, *Leon's* good-faith exception would apply and would not support the suppression of the evidence seized during the execution of the search warrant.

**6.   Mr. Baxter has not presented any legal basis to suppress any statements he made to law enforcement.**

As noted earlier, Mr. Baxter did not identify the statements he believes should be suppressed.   He also has not provided any cogent argument or pertinent legal authority to support his request to suppress any of the statements he made to law enforcement. As Mr. Baxter provides no basis to suppress his statements, the Court will deny his request for such. *See, e.g., United States v. Smith*, No. 1:07–CR–54–WSD, 2008 WL 746546, at *7 (N.D. Ga. Mar. 18, 2008), adopted at *4 (noting that defendant had abandoned motion to suppress statements where he made no argument with respect to it); *United States v. Paul*, No. CR 15-48 (ADM/SER), 2015 WL 7185795, at *4 (D. Minn. Nov. 4, 2015), *report and recommendation*

*adopted*, No. CR 15-48 (ADM/SER), 2015 WL 7195019 (D. Minn. Nov. 16, 2015) (lack of argument in support of motion to suppress statements left the district court with "no facts or law upon which to review" the defendant's suppression request).

## CONCLUSION AND ORDER

The state court judge correctly determined probable cause supported the search warrant here; that probable cause was not vitiated by the typographical and clerical errors; and *Leon's* good-faith exception would preclude suppression if the state court judge was incorrect. Additionally, Detective Patterson did not knowingly or recklessly include false information or omit material exculpatory information from his affidavit. Thus, there is no basis to suppress the evidence or statements in this case.

**IT IS THEREFORE ORDERED** that Defendant Vincent Baxter's Motion to Suppress (Doc. 29) is **DENIED**.

**DATED:** December ___14___, 2020.

Scott W. Skavdahl
United States District Judge